IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY L. WHITE, | ) | CIVIL ACTION NO. 00-2466 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHAYEN A. GEORGE, M.A., | ) | |
| | ) | |
| Defendant. | ) | |

**OMNIBUS REPLY TO:**
**(1) MOTION FOR PROTECTIVE ORDER, MOTION TO QUASH SUBPOENAS AND MOTION FOR SANCTIONS FILED BY DEFENDANT SHAYEN A. GEORGE, AND (2) MOTION FOR ORDER QUASHING SUBPOENA DIRECTED TO PSYCHOLOGY SUPPORT SERVICES, LLC AND JONES, GREGG CREEHAN & GERACE, LLP**

Plaintiff, Mary L. White ("White"), by her counsel Feldstein Grinberg Stein & McKee and Stanley M. Stein, files the following Omnibus Reply to the Motion for Protective Order, Motion to Quash Subpoenas and Motion for Sanctions filed by Defendant Shayen A. George and Motion for Order Quashing Subpoena Directed to Psychology Support Services, LLC, and Jones, Gregg, Creehan & Gerace, LLP, and avers in support thereof the following:

1. The instant Subpoenas and Request for Production complained of by Defendant Shayen A. George ("George") in his Motion for Protective Order, Motion to Quash Subpoenas and Motion for Sanctions ("Motions") and by Psychology Support Services, LLC ("PSS"), and Jones, Gregg, Creehan & Gerace, is, as accurately predicted by George in paragraph 11 of his Motion, the consequence of the surfacing within the last month or so of information about which Plaintiff was unaware and which was not made known by George at the time of this Court's original determination as referred to in said paragraph.

2. As this Court is well aware from prior filings by the parties, it is and has been White's contention that George engineered her ouster from the management of Associates in Counseling and Child Guidance ("ACCG") and attempted to dissolve or otherwise destroy

{00346353.1}

Associates in Child Guidance ("ACG") so that he could divert the revenue generated from the business operations of ACCG to himself.

3. In paragraph 11 of his Motions, George represents that he made it known that PSS was a vendor of computer services to ACCG and that he did not own PSS but that his daughter did.

4. Within the past month, however, counsel for White has obtained from the Attorney General of Pennsylvania IRS Form 990's, which are tax returns filed by non-profit corporations with the Internal Revenue Service and which returns are later downloaded from the Internal Revenue Service by the Commonwealth Office of the Attorney General, who oversees the financial affairs of non-profit corporations in the state. Those 990's for the years 1999 through 2003 are attached hereto and labeled Exhibits "A" through "E".

5. A review of the relevant portions (Tabbed C-1 through E-1) of the 990's reveals that in 2001, George caused ACCG to pay to PSS the sum of $295,000. Since that time, George has caused ACCG to pay to PSS an additional $120,000 per year for the years 2002 and 2003, for a total of almost $600,000. In addition, George has caused ACCG to pay to Tom George, a member of the ACCG Board who voted to terminate White's relationship with ACCG, the sum of $25,000 in alleged expenses (Tab D-2). The 990's identify PSS as a "psychological consulting service," not as a vendor of computer services.

6. George's daughter, Stacy, is alleged by George to be the "owner" of PSS. Commonwealth records (Exhibit F) show that PSS was originally organized as a limited liability company named Professional Employment Management Services ("PEMS"). The name of the organizer on the organization papers is Gregory Klink, who was an attorney, now deceased, for George's law firm, Jones, Gregg, Creehan & Gerace. Stacy George is identified as the "manager" of PSS on a document by which the name of the limited liability company was

{00346353.1}

changed from Professional Employment Management Services to Psychological Support Services in the year 2001.

7. Stacy George has a master of science degree in education and is employed full-time as a psychotherapist by ACCG and, quite frankly, White does not believe that she actually owns a company to which George would approve the payment by ACCG of almost $600,000 nor does White believe that Stacy George is capable of providing computer services to ACCG, as those services used to be provided in a similarly named corporation by George himself.

8. Accordingly, White believes and therefore avers that George has organized PSS with his daughter as the nominal owner but that he controls the company, its finances and its money.

9. Further, George's protestations with regard to the order in which the depositions of George and White are to be taken are also disingenuous. In connection with the Mercer County litigation, George has already deposed White in full and with regard to every single issue and fact which might be relevant to the instant case. Beginning on July 10, 2000, through July 28, 2005, George and ACCG have deposed White on ten (10) separate days and have generated 1,764 pages of deposition transcript. There is nothing left to depose Mary White about in this case.

10. The only discovery which still needs to be done in this case and has not already been done in the Mercer County litigation is discovery related to the financial circumstances of ACCG and the manner in which Defendant George has personally benefited from his freeze-out of Plaintiff White from the operation of ACCG and ACG.

11. Among other things which are relevant and admissible on this issue in addition to the newly discovered payment of almost $600,000 to PEMS/PSS, are (1) the astronomical increase in the salary of Shayen George as the executive director of ACCG from $57,500 per

year in 1999 (Tab A-2), to $93,300 in 2000 (Tab B-2), to $122,534 in 2001 (Tab C-2), to $178,070 in 2002 (Tab D-2) to more than $330,000 per year in 2003 (Tab E-2) and undoubtedly higher than that in 2004 and 2005, (2) the payment of $25,000 in alleged "expenses" to Tom George and (3) the manner and reason for the amassing by ACCG as of the end of 2003 of more than $1 million in cash which, in accordance with White's claim, would have been paid to ACG and distributed to its shareholders, including herself, if George had not frozen her out of the revenue-generating businesses.

12. White denies that the Notices of Deposition and Subpoenas violate any Court Order in that the circumstances giving rise to such Notices and Subpoenas are new and derived from very recently learned information which had not been previously provided – and in fact have been actively concealed – by Defendant George. No Court Order required White to first seek the permission of the Court before seeking discovery based on newly-discovered information.

13. The record of deposition testimony in this case reveals that prior to March 5, 1999, the date on which ACCG was organized, Tom George, Shayen George's cousin and member of the Board who voted in favor of ousting Mary White from the management of ACCG, took Shayen George to the office of Richard B. Sandow. (Cf. testimony of Thomas George taken on June 7, 2005 in the Mercer County cases, attached hereto as Exhibit "G").

14. On May 18, 1999, two months after ACCG was organized, organization papers for PEMS, LLC, were filed in the Commonwealth naming Gregory Klink, a now-deceased attorney with Sandow's office, as the organizer.

15. White believes that the purpose of organizing an LLC with the name Professional Employment Management Services, LLC, was to set up a business organization owned by Shayen George to replace ACG as the organization that employed the TSS workers and to which

{00346353.1}

the revenue generated from billing the Commonwealth would be directed. In this way, George would put himself in the position to retain all of the revenue generated by the employment agency (ACG) instead of sharing the revenue with White. Because of the on-going litigation, George has been unable to get the cash out of ACCG and into his own pocket.

16.     While George has filed an Affidavit in which he claims that he is not the "owner" of PEMS/PSS, such a claim is merely technical in nature and is not supported by any documentation showing the "ownership" of the limited liability company. George asserts that PEMS/PSS is a computer services organization owned by his daughter, but it is Shayen George, not his daughter, who has the computer expertise and who at one time was the sole shareholder in a Subchapter S corporation named Psychological Support Services, Inc. (Ex. H). Plaintiff would testify that Psychological Support Services, Inc., had its place of business located at P.O. Box 710, 7 West State St., Sharon Pa. Box 710 is a mail box in the name of Shayen A. George.

17.     White, as indicated above, therefore believes that Stacy George is not the real owner of PEMS/PSS and that she does not receive the money generated from the payments to PSS from ACCG. Moreover, the information contained in the Form 990's is, in any event, discovery-relevant information which White should have the ability to follow up. Even if Stacy George is the actual owner of PSS, George's payment of almost $600,000 of ACCG money to a company owned by his daughter is certainly a fair subject for additional discovery.

18.     PSS and Jones, Gregg have again raised the insupportable claim that the information which White seeks is somehow protected trade secret information. They raise this claim, as they have done in the past, in conclusory form without any factual substantiation which it is their burden to produce. They do so, as they have also done in the past, so that in the event the Court denies their motions they can attempt another interlocutory appeal and thus delay the production of the information even further. In fact, the information sought by White is not trade

{00346353.1}

secret information. There is no information which would be required by PSS or Jones, Gregg to produce which would be trade secret. The failure of PSS or Jones, Gregg to identify the nature of the trade secrets is fatal to its claim for protection. In any event, counsel for White is willing to receive such information under an attorney's eyes only protective order.

19. In addition, although in Paragraph 16 of their Motion, which was electronically filed on November 15, 2005, they falsely allege that the Court of Common Pleas of Mercer County has precluded White from obtaining "this confidential information," when they were fully aware that on November 2, 2005, Judge Dobson of the Mercer County Court ordered that all of the documents relating to the payments by ACCG to PSS as evidenced in the Form 990's be produced to White. (Cf., Ex. I). On November 15, 2005, Judge Dobson denied a motion to reconsider the order of November 2, 2005.

20. Jones, Gregg's claim in Paragraph 18 of its Motion that the materials sought are work-product prepared in anticipation of litigation taking place in another county surely must rank as one of the more frivolous efforts to block proper discovery. How could documents and testimony regarding the organization of a limited liability company and documents evidencing the alleged services provided by that company and the payment for those services be documents prepared in anticipation of litigation? They can't, unless, of course, they want to admit that the organization of the company in May, 1999, with a sham owner _was_ undertaken for the specific purpose of hiding from the Plaintiff during the anticipated litigation the fact that George was financially benefiting himself as Plaintiff alleges he was. (It should be remembered that at approximately the same time, in April, 1999, that George secretly and fraudulently opened two bank accounts, one in the name of ACG and one in the name of ACCG, about which he did not tell White and on which he did not include her name as an authorized signator, and that in May, 1999, he embarked, again without telling White, on a search for new corporate premises despite

the fact that he and White had, only in February, 1999, purchased an office building to house the corporations)

WHEREFORE, White requests this Honorable Court to deny the Motions for Protective Order, to Quash the Subpoena and for Sanctions and to order that the parties subpoenaed appear for their depositions at such time as shall be determined by counsel for White and that the documents subpoenaed be produced forthwith.

        Respectfully submitted:

        FELDSTEIN GRINBERG STEIN & MCKEE

By:_____
   Stanley M. Stein, Esquire
   Pa. I.D. No. 10577

{00346353.1}

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Reply to Motion for Protective Order, Motion to Quash Subpoenas and Motion for Sanctions Filed by Defendant was served via First Class, U.S. Mail, postage prepaid, this 30th day of November, 2005, upon the following:

John P. Corcoran, Jr., Esquire
Jones, Gregg, Creehan & Gerace, LLP
411 Seventh Avenue, Suite 1200
Pittsburgh, PA 15219-1905

Brian T. Must, Esquire
Metz Lewis
11 Stanwix Street
Pittsburgh, PA 15222

*Stanley M. Stein*
Stanley M. Stein

{00346353.1}